**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

In re:                              )   BAP No.   EW-11-1537-PaDH
                                    )
ARNOLD JOHN ALLEN, JR. and          )   Bk. No.   11-01152
KIMBERLY FAITH ALLEN,               )
                                    )
                 Debtors.           )
_____)
                                    )
ARNOLD JOHN ALLEN, JR.;             )
KIMBERLY FAITH ALLEN,               )
                                    )
                 Appellants,        )
                                    )
v.                                  )   **O P I N I O N**
                                    )
US BANK, NATIONAL ASSOCIATION,)
                                    )
                 Appellee.          )
_____)

Argued and Submitted on May 16, 2012
at Pasadena, California

Filed - June 8, 2012
Ordered Published - June 14, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington

Honorable Patricia C. Williams, Bankruptcy Judge, Presiding

Appearances:     William Jeffrey Barnes argued for appellants Arnold
                 John Allen, Jr. and Kimberly Faith Allen; Ryan P.
                 McBride of Lane Powell, PC argued for appellee
                 US Bank, National Association.

Before:   PAPPAS, DUNN and HOLLOWELL, Bankruptcy Judges.

PAPPAS, Bankruptcy Judge:

Chapter 13[1] debtors Arnold John Allen, Jr. and Kimberly Faith Allen (the "Allens") appeal the bankruptcy court's order overruling their objection to the claim of U.S. Bank, National Association ("USB"). We AFFIRM.

**FACTS**

According to the documentary evidence admitted without objection in the record of the bankruptcy court, the following facts and transactions of relevance to this appeal occurred.

On April 24, 2006, the Allens executed a promissory note (the "Note") in the amount of $164,000 in favor of Dream House Mortgage Corporation ("DHMC"). An endorsement in blank appears on the third page of the Note, which reads, "Pay to the Order of; Without Recourse, By [signed initial "J"] John C. Pointe, President, Dream House Mortgage Corporation." There is also an allonge attached to the Note reciting substantially the same information, but with the addition of a date, April 28, 2006.

The Note was secured by a recorded deed of trust ("DOT") executed by the Allens on their property in Newport, Washington (the "Property"). In the DOT, Mortgage Electronic Registration Systems, Inc. ("MERS") is named as the grantee and nominee for DHMC.

On May 31, 2006, the president of DHMC executed a "Lost Note Affidavit and Agreement" (the "Lost Note Affidavit"). The Lost

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Note Affidavit recites, among other things, that DHMC "was the current holder of the indebtedness evidenced by the" Note; the original Note had been lost, and attached to the allonge was a photocopy of the original in its files; and pursuant to a Mortgage Loan Sale Agreement ("MLSA") dated May 3, 2002, DHMC had "assigned all its rights, title and interest in and to the Mortgage Loan identified below [the Loan]" to DLJ Mortgage Capital Inc. ("DLJ").

On September 1, 2006, DLJ entered into a Pooling and Servicing Agreement ("PSA") that established the CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-1. The parties to the PSA were Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse"), the Depositor; DLJ, the Seller; Wells Fargo Bank N.A. ("Wells Fargo") as Servicer, Master Servicer and Trust Administrator; Washington Mutual Mortgage Securities Corp. ("WaMu") as Servicer; Select Portfolio Servicing, Inc. [later known as America's Servicing Co.]("ASC") as Servicer; and USB as Trustee. The PSA provided for the transfer of the Note from DLJ to USB as Trustee under the PSA. To implement this transaction, DLJ first transferred the Note to Credit Suisse, the Depositor, and then Credit Suisse assigned the Note to USB, the Trustee. Section 201(a) of the PSA provides in part:

> [Credit Suisse] hereby sells, transfers, assigns, delivers, sets over and otherwise conveys to [USB] for the benefit of the Certificateholders and the Certificate Insurer, without recourse, [Credit Suisse's] right, title and interest in and to (a) the Mortgage Loans listed in the Mortgage Loan Schedule ["MLS"].

-3-

The MLS[2] attached to the PSA lists the Property, identified by the owner "Allen," and the same address listed in the Allens' bankruptcy schedules.

"Mortgage Loans" is a defined term in the PSA Article I; the term includes "related Mortgage Notes." Section 201(d) of the PSA provides that, "It is the express intent of the parties to this Agreement that the conveyance of the Mortgage Loans by [Credit Suisse] to [USB] be construed as a sale of the Mortgage Loans by [Credit Suisse] to [USB]." In addition, the PSA states in § 12.04(a) that:

> It is the express intent of [Credit Suisse], [DLJ], [Wells Fargo, WaMu], and [USB] that (I) the conveyance by [DLJ] of the Mortgage Loans to [Credit Suisse] pursuant to the Assignment and Assumption Agreement and (v) the conveyance by [Credit Suisse] to [USB] as provided for in Section 2.01 of each of [DLJ's] and [Credit Suisse's] right, title and interest in the Mortgage Loans be, and be construed as, an absolute sale and assignment by [DLJ] to [Credit Suisse] and by [Credit Suisse] to [USB].

PSA §§ 201(b)(I) and 206 confirm the actual delivery and receipt of the Lost Note Affidavit from DLJ to Credit Suisse, and to USB. PSA §§ 3.01-3.03 provide that Wells Fargo and ASC have authority to service, administer, enforce and foreclose the Mortgage Loans to protect the interests of the trust "in the same manner as it protects its own interests in mortgage loans in its own portfolio[.]" The PSA was signed by officers of each of the parties.

---

[2] "MLSA" should not be confused with the similar acronym, "MLS." The Mortgage Loan Service Agreement (MLSA) was an agreement dated May 3, 2002, between DHMC and DLJ regarding assignment of mortgage loans from DHMC to DLJ. The Mortgage Loan Schedule (MLS) was the list of mortgage loans included in the PSA.

The Allens filed a petition for relief under chapter 13 on March 9, 2011. Their schedules listed no secured creditors, the value of the Property as $180,000, and total unsecured debt of $358,072.31. Two days later, the Allens filed a proposed chapter 13 plan which did not provide for any payment to secured creditors.

Wells Fargo filed a secured proof of claim in the Allens' bankruptcy case on March 31, 2011 in the amount of $204,526.95 (the "Wells Fargo Claim"). The Allens objected to the Wells Fargo Claim, arguing that Wells Fargo was not the lender, that the allonge was not attached to the Note that was attached to the Wells Fargo claim, and consequently, appeared to have been created after the Note, and that Wells Fargo had not established that it was holder of the Note entitled to enforce the Note or the DOT.

USB filed an amended proof of claim on June 7, 2011 (the "USB Claim") in its capacity as Trustee under the PSA. On June 22, 2011, USB filed a response to the Allens' claim objection, noting that the Wells Fargo claim had been filed by Wells Fargo acting in its capacity as Servicer. USB described the history of the Note and DOT transactions, explaining that the Note had been lost, that USB had standing to file a proof of claim as a "person entitled to enforce the Note," and pointing out that any issues regarding the allonge were immaterial because an endorsement in blank appeared on the face of the Note.

The Allens objected again, this time to the USB claim, now challenging the "chain of possession" showing transfer of the Note from DHMC to USB.

The bankruptcy court conducted a hearing on the Allens'

objection to the USB claim on August 30, 2011. Both the Allens and USB were represented by counsel who were heard. Early in the hearing, the parties agreed to admit all of the documentary evidence offered by USB, including, among others documents, copies of the Assignment of Deed of Trust, the Note, the Lost Note Affidavit, the DOT, the PSA, and the MLS. During the hearing, counsel for USB presented to the bankruptcy court the original Lost Note Affidavit, with a copy of the Note attached to it, and the original DOT. Tr. Hr'g 46:23-25, August 30, 2011. The court verified that the documents had been signed, and that the DOT bore a recording stamp. Counsel for the Allens acknowledged that she had reviewed the original documents presented by USB, and did not object to their admission into evidence. The bankruptcy court took issues raised by the Allens' objection to the USB claim under submission.

On September 15, 2011, the bankruptcy court entered a "Memorandum Decision Re: Debtors' Amended Objection to U.S. Bank National Association's Amended Proof of Claim." In its decision, the court decided that USB's "Amended Proof of Claim is a valid claim." Among the bankruptcy court's findings and conclusions were that:

- The Lost Note Affidavit satisfied the requirements of applicable state law, RCW 62A.3-309, and therefore constituted an acceptable substitute for the original Note.

- The endorsement in blank on the face of the Note complied with the applicable requirements of the Bankruptcy Code to evidence transfer, and therefore, the allonge was superfluous.

- The contents of the Lost Note Affidavit demonstrated that

-6-

the transfer from DHMC to DLJ included the right to enforce the Note, and that such right could thereafter be transferred by DLJ to another.

- There was no evidence to indicate, or from which it could be inferred, that the transfer of the Note by DLJ was a transfer of less than all rights under the Note.

In summary, the bankruptcy court stated:

> The Court finds that the Lost Note Affidavit is sufficient to replace the original Promissory Note. The endorsement in blank on the face of the Note was legally sufficient pursuant to RCW 62A.3-204. Wells Fargo d/b/a [ASC] is the agent of U.S. Bank and would have standing to file the claim so long as U.S. Bank is the person entitled to enforce the Note. The transfer of the Note from Dream House to DLJ was for the purpose of enforcing the Note. The evidence introduced by U.S. Bank satisfies its burden of demonstrating that it is the person entitled to enforce the Note. Therefore, U.S. Bank and/or [ASC] has standing to file the Proof of Claim. Debtor's Amended Objection (Docket No. 49) is OVERRULED. The Amended Proof of Claim filed on June 7, 2011 is proof of a valid claim.

The bankruptcy court entered an Order overruling the Allens' objection to the USB claim on September 15, 2011. The Allens filed a timely notice of appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). The Panel has jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred overruling the Allens' objection to the USB claim.

## STANDARD OF REVIEW

"An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we

-7-

review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error." Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011). We review de novo whether a party has standing. Mayfield v. United States, 599 F.3d 964, 970 (9th Cir. 2010); In re Veal, 450 B.R. at 906.

De novo review is independent, with no deference given to the trial court's conclusion. Barclay v. Mackenzie (In re AFI Holding, Inc.), 525 F.3d 700, 702 (9th Cir. 2008). Review under the clearly erroneous standard is significantly deferential, requiring a "definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242 (2001).

**DISCUSSION**

Although the Allens did not list any secured debt for the Property in their bankruptcy schedules, they have not disputed that they executed the Note and DOT in connection with a home mortgage loan, that they owe over $200,000 on that loan, or that some entity holds a secured claim in the bankruptcy case on account of that loan. The sole issue presented in this appeal is whether USB is that creditor.

The Allens have generally characterized that inquiry as one of standing; they allege that USB has failed to demonstrate it has standing to assert the claim in the bankruptcy case.[3] The

---

[3] The issue of standing involves both "constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975); In re Veal, 450 B.R. at 906. Only prudential standing is
(continued...)

-8-

bankruptcy court disagreed.

Our opinion in In re Veal provides a comprehensive examination of standing in the context of a mortgage loan claim in a bankruptcy case and of the rights of parties entitled to enforce a promissory note. 450 B.R. at 902. As explained in that decision, a "person entitled to enforce the note," as defined in U.C.C. § 3-301, has the requisite standing to file a proof of claim in a bankruptcy case. Id. Washington's version of this U.C.C. provision is RCW 62A.3-301,[4] which lists three ways in

---

[3](...continued)
at issue in this appeal, which requires that a party assert only its own claim rather than the claims of another. Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir. 2004).
    In addition, claim objections are contested matters under Rule 9014. Rule 9014(c) makes Civil Rule 17(a)(1) (incorporated by Rule 7017) applicable to contested matters. Civil Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest." To satisfy the requirements of prudential standing and Civil Rule 17(a)(1), "the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." 6A Wright, Miller, Kane & Marcus, FED. PRAC. & PROC. ¶ 1543 (3d ed. 2010); In re Veal, 450 B.R. at 908. A party without the legal right to enforce an obligation under substantive law is not a real party in interest. See Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008); In re Veal, 450 B.R. at 908 ("The modern function of the rule . . . is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.").

[4] For the purpose of determining who is entitled to enforce a note, "the forum state's choice of law rules determine which state's substantive law applies." In re Veal, 450 B.R. at 920 n.41. Washington's choice of law statute provides that in the absence of an agreement stating which law governs, Washington's version of the Uniform Commercial Code applies to transactions bearing a "reasonable relation" to the state. See RCW 62A.1-105. The Allens reside at the Property which is located in Washington, and USB does not dispute that Washington law governs. To the extent that we are called upon to construe Washington state law, the Washington Supreme Court instructs that: "In interpreting a statute, our primary objective is to ascertain the legislative
(continued...)

-9-

which a person may acquire "person entitled to enforce the note" status:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

RCW 62A.3-301. This statute, in turn, refers to RCW 62A.3-309, the provision applicable to lost notes, which provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, RCW 62A.3-308 applies to the case as if the person seeking enforcement had produced the instrument[.]

RCW 62A.3-309.

The plain meaning of RCW 62A.3-309(a) is that a person no longer in possession of an instrument is nonetheless entitled to

---

[4](...continued) body's intent. If a statute's meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent." <u>Dowler v. Clover Park Sch. Dist. No. 400</u>, 258 P.3d 676, 682 (Wash. 2011) (citation omitted). Neither party has suggested that the applicable Washington U.C.C. provisions are in any way ambiguous, so we assign those provisions their plain meaning.

-10-

enforce it if that person was in possession and entitled to enforce it when the loss of possession occurred. Subsection (b) requires a proponent under subsection (a) to prove the terms of the instrument, e.g., via a Lost Note Affidavit. As the bankruptcy court correctly reasoned, the questions that arise in this case are: (1) did the Lost Note Affidavit constitute adequate proof of the terms of the Note under RCW 62A.3-309; and (2) could an assignee of a lost promissory note enforce the note based on the Lost Note Affidavit. The court noted that there was no Washington case law interpreting RCW 62A.3-309, and our own research confirms that. But the bankruptcy court did refer to cases from other courts in states with comparable U.C.C. provisions where a Lost Note Affidavit was used as a substitute for a lost promissory note, and holding that rights under a lost note may be assigned.

For example, according to the holding in Bobby D. Assocs. v. DiMarcantonio, 751 A.2d 673, 676 (Pa. Super. Ct. 2000), the assignee of a lost promissory note may enforce the note through a Lost Note Affidavit. And the Alabama Supreme Court decided in Atl. Nat'l Trust, LLC v. McNamee, 984 So. 2d 375 (Ala. 2007) that a valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses, such that the assignee simply steps into the shoes of the assignor. Applying this law in the context of a lost, destroyed, or stolen promissory note, if the assignor of a promissory note was entitled, when the assignor owned the note, to enforce the note under Ala. Code § 7-3-309, the assignee of the promissory note steps into the assignor's shoes and acquires the right to enforce the promissory note under

-11-

§ 7-3-309. Id. at 378.

The Fifth Circuit applied the Louisiana U.C.C. in Caddo Parish-Villas S., Ltd. v. Beal Bank, S.S.B. (In re Caddo Parish-Villas S., Ltd.), 250 F.3d 300, 302 (5th Cir. 2001). The trial court had been given an affidavit and other evidence as proof of the contents of the original note. As the assignee of a note, plaintiff stood in the shoes of the assignor and obtained all the rights, title, and interest that the assignor had at the time of the assignment. This would include the right of enforceability under La. Rev. Stat. Ann. § 10:3-309.

These states' versions of U.C.C. § 3-309 — RCW 62A.3-309(a), 13 Pa. Cons. Stat. § 3309(a), Ala. Code § 7-3-309, and La. Rev. Stat. Ann. § 10:3-309 — are virtually indistinguishable, and we have found no case law in those states inconsistent with the cited cases.

The Allens challenge reliance upon these cases as inconsistent with In re Weisband, 427 B.R. 13 (Bankr. D. Ariz. 2010). The bankruptcy court in In re Weisband indeed held that an allonge attached to a Note would not be sufficient to transfer the Note because an indorsement in blank must appear on the face of the note and not on an attached page. But as the bankruptcy court noted, that holding is of no moment in this case, since here the allonge was superfluous because the Note contained an endorsement in blank on its face. As the court explained, RCW 62A.3-204 provides:

> (a) "Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or

-12-

(iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument. . . . .
(c) For the purpose of determining whether the transferee of an instrument is a holder, an indorsement that transfers a security interest in the instrument is effective as an unqualified indorsement of the instrument.

Based on its analysis of available law, the bankruptcy court determined that the Lost Note Affidavit, with the endorsement in blank appearing on its face, was sufficient to replace the original Note. We find no error in this conclusion. Once it was established that the Note was endorsed in blank, the Note became a bearer instrument:

Special indorsement; blank indorsement; anomalous indorsement . . . . (b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

RCW 62A.3-205; Pequignot v. Deutsche Bank Nat'l Trust Co. (In re Pequignot), 2010 WL 3605326, at *3 (W.D. Wash. 2010).

It is uncontested that USB presented the Lost Note Affidavit and the copy of the original Note, endorsed in blank, at the hearing on August 30, 2011. As a bearer instrument, the Note was negotiable by transfer of possession alone. RCW 62A.3-201(a) ("Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.). The bankruptcy court found, and counsel for the Allens agreed, that the Note was

-13-

authentic and admissible in evidence, and was in the possession of USB. That the Lost Note Affidavit with a copy of the original Note endorsed in blank was in the possession of USB and physically presented to the bankruptcy court, standing alone, gave USB status of a holder and a "person entitled to enforce" the instrument and, consequently, the real party in interest for purposes of filing a proof of claim. In re Veal, 450 B.R. at 920.

The Allens, as noted above, did not deny that they were obligated under the terms of the Note, nor did they object to the admission of the Assignment of Deed of Trust, the Note, the Lost Note Affidavit, the DOT, the PSA, the MLS and the declaration of Beverly DeCarlo, vice president for loan documentation of Wells Fargo. Indeed, the Allens failed to submit any declaratory or documentary evidence to the bankruptcy court at all. Instead, the focus of the Allens' objection to USB's status as a holder of the Note consisted solely of their challenge to the chain of possession of the Note:

> [USB] is not a person entitled to enforce the Note as (a) it failed to prove that the Debtors' mortgage loan was even within the inventory of DHMC at the time of the alleged conveyance thereof to DLJ; (b) the MLSA which was the alleged source of the authority for the transfer from DHMC to DLJ was never introduced into evidence; (c) there was no evidence of actual delivery of the Debtors' mortgage loan to [USB]; and (d) there is a factual finding that the DOT was never assigned to [USB] as required by the PSA to which [USB] was a party, which it was bound by, and which it agreed to in terms of the manner by which mortgage loans were to be conveyed to the Trust. Thus, the bankruptcy court's decision was clear error and must thus be reversed and vacated.

The Allens' Op. Br. at 18.

None of these allegations is supported by the record. On the contrary, the bankruptcy court examined each allegation and, based

-14-

on the evidence, ruled against the Allens. As the court explained:

1. The Allens' first allegation: "[USB] is not a person entitled to enforce the Note as (a) it failed to prove that the Debtors' mortgage loan was even within the inventory of DHMC at the time of the alleged conveyance thereof to DLJ[.]" In its Memorandum, the bankruptcy court cited to ¶ 1 of the Lost Note Affidavit, which recites, "[i]immediately prior to the assignment by the Seller [DHMC] of its interest in such Mortgage Loan to the Purchaser [DLJ], the Seller [DHMC] was the current holder of the indebtedness evidenced by the Mortgage Note." A copy of the Note was attached to and incorporated in the Lost Note Affidavit. The Lost Note Affidavit was executed and sworn by John C. Pointe, president of DHMC, and constitutes evidence that the original note was in the possession (or in the Allens' term, in the "inventory") of DHMC at the time of the conveyance to DLJ. The Allens provide no evidence to the contrary.

2. The Allens second allegation: "[USB] is not a person entitled to enforce the Note as . . . (b) the MLSA which was the alleged source of the authority for the transfer from DHMC to DLJ was never introduced into evidence[.]" The "phantom" MLSA is a recurring theme of the Allens' arguments, even though the bankruptcy court clearly disposed of this contention in its Memorandum:

> Even though the [conveyance from DHMC to DLJ] took place four years after the underlying transaction [the MLSA], the [Lost Note Affidavit] introduced into evidence acknowledges and recites that all rights under the Note have been transferred to DLJ. This satisfies the burden of producing evidence that the purpose of the transfer was to enforce the Note as "all right[s]" and "all

-15-

interest" must necessarily include the right to enforce [the definition of a "holder"]. At a minimum, this evidence shifts the burden of producing evidence to the Debtors to produce evidence casting doubt upon the recitations in the agreement.

In short, the bankruptcy court found that the missing MLSA was not essential in determining if possession of the Note and authority to enforce its provisions was conveyed from DHMC to DLJ. The court found that, based on the evidence in the Lost Note Affidavit, the Note was conveyed to DLJ with authority to enforce it, thus making DLJ a holder by negotiation of the Note. Again, the bankruptcy court correctly observed that the Allens had produced no evidence casting doubt upon the recitations in the Lost Note Affidavit.

3. "[USB] is not a person entitled to enforce the Note as . . . (c) there was no evidence of actual delivery of the Debtors' mortgage loan to [USB][.]" Relying on the PSA, which was admitted into evidence without objection by the Allens, in its Memorandum, the bankruptcy court stated,

Section 2.01(b)(i)(A) of the PSA recites that delivery of each original Note or a Lost Note Affidavit has occurred. Section 2.01(d) reiterates that the intent of the PSA is to convey and sell the Mortgage Loans. In Section 2.06, U.S. Bank acknowledges the assignment and delivery of the Mortgage Loans. There is no evidence which indicates or from which it could be inferred that the transfer of this Note by DLJ [to Credit Suisse to USB] was a transfer of less than all rights held in the Note.

In other words, the sole evidence presented to the bankruptcy court was that the Note was conveyed and delivered, with the right to enforce the Note intact, from DLJ to Credit Suisse to USB. The Allens provided no contrary evidence.

4. Finally: "[USB] is not a person entitled to enforce the

-16-

Note as . . . (d) there is a factual finding [by the bankruptcy court] that the DOT was never assigned to [USB] as required by the PSA to which [USB] was a party[.]"  The Allens take this factual finding out of context.  The complete statement in the factual section of the bankruptcy court's Memorandum reads:

> No assignment of the Deed of Trust has occurred.  Under Washington law, the person entitled to enforce the obligation secured by the Deed of Trust is entitled to foreclose.  The determination of the identity of the "person entitled to enforce" the Note will therefore determine the identity of the entity entitled to foreclose the Deed of Trust.

By this statement, the bankruptcy court is explaining that, in this setting, the DOT, which was not directly conveyed by the PSA, is unimportant.  As noted by the court, the critical issue for claim purposes of judging allowance of a claim is who is the "person entitled to enforce the Note" (i.e., the holder of the Note).  In this respect, the bankruptcy court is correct that an assignment of the DOT is not relevant because under Washington law, the security for an obligation follows the debt. RCW 61.24.005(2) ("'Beneficiary' means the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation."); Mutual Sec. Fin. v. Unite, 847 P.2d 4, 6 (Wash. Ct. App. 1993) ("the promissory note was secured by the deed of trust . . . and . . . assignment of the note . . . carried with it the deed of trust").

In summary, USB established by documented, probative evidence that it was holder of the Note by negotiation from DHMC to DLJ to Credit Suisse to USB.  In contrast, the Allens provided no evidence whatsoever to challenge the physical transfer of the Note

-17-

with its rights intact. Indeed, at the hearing, counsel for the Allens consented to the admission of all the USB supporting documents, and instead argued that the evidence should be given little weight. But weighing of evidence is within the "broad discretion" of the trial court. Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1225 (9th Cir. 2011); Hagans v. Andrus, 651 F.2d 622, 627 (9th Cir. 1981) ("Of course, the evaluation and weighing of evidence is within the discretion of the [trial] judge."). Here, the bankruptcy court did not abuse its discretion in weighing the evidence when it ruled in favor of the only side presenting evidence.

Because the bankruptcy court found that the evidence proved that USB was a holder of the Note, its determination that USB was a "person entitled to enforce the Note" will not be disturbed.

**CONCLUSION**

We AFFIRM the bankruptcy court's order overruling the Allens' objection to the USB claim.