NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-11-1374-MkHHa |
| JOAN KATHLEEN GREEN, | Bk. No.   ND 09-11614-RR |
| Debtor. | |
| JOAN KATHLEEN GREEN, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| WATERFALL VICTORIA MASTER FUND 2008-1 GRANTOR TRUST SERIES A; QUANTUM SERVICING CORPORATION, | |
| Appellees. | |

Submitted Without Oral Argument
on September 21, 2012

Filed – October 15, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robin L. Riblet, Bankruptcy Judge, Presiding

Appearances:     Appellant Joan Kathleen Green pro se on brief; Melissa Robbins Coutts of McCarthy & Hotlhus, LLP on brief for appellees Waterfall Victoria Master Fund 2008-1 Grantor Trust Series A and Quantum Servicing Corporation.

Before:   MARKELL, HOLLOWELL and HAMMOND,[**] Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (<u>see</u> Fed. R. App. P. 32.1), it has no precedential value. <u>See</u> 9th Cir. BAP Rule 8013-1.

[**]Hon. M. Elaine Hammond, United States Bankruptcy Judge for the Northern District of California, sitting by designation.

**INTRODUCTION**

Through an agent, Waterfall Victoria Master Fund 2008-1 Grantor Trust Series A ("Waterfall") filed a proof of claim in the bankruptcy case of debtor Joan K. Green ("Green"). Green objected to Waterfall's proof of claim, but the bankruptcy court overruled that objection. Green then sought rehearing and reconsideration, which relief the court also denied. Green appealed. We AFFIRM.

**FACTS**

Doing business as Cripple Creek Mountain Ranch, LLC, Green ran what she described as a hospitality business out of a single family residence located on Melody Mountain Lane in Paso Robles, California ("Property"). In her bankruptcy schedules, she listed the Property as worth $1.3 million with roughly $1 million in encumbrances.

On May 1, 2009, she filed her chapter 11[1] bankruptcy petition. Roughly one year later, in May 2010, Waterfall and its servicing agent LoanCare, A Division of FNF Servicing, Inc. ("LoanCare") filed a motion for relief from the automatic stay ("Relief From Stay Motion"), seeking to pursue foreclosure proceedings against the Property. Waterfall asserted, through its servicing agent LoanCare, that as of April 2010 Green owed it over $1.1 million and that Green's indebtedness ("Loan") was secured by a first deed of trust against the Property.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

Waterfall attached to its moving papers the following documents as exhibits:

1. A conformed copy of a deed of trust ("Deed of Trust") dated May 24, 2007 (recorded as document no. 2007036626 in the San Luis Obispo County Recorder's Office) identifying Green as borrower, Greenpoint Mortgage Funding, Inc. as lender ("Greenpoint") and Mortgage Electronic Registration Systems, Inc. or "MERS"[2] as the beneficiary, solely as the "nominee"

---

[2]Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034 (9th Cir. 2011), recently described MERS and its general purpose:

> MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the "beneficial interest" in home loans, as well as any changes in loan servicers. After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers. The owner of the beneficial interest is entitled to repayment of the loan. For simplicity, we will refer to the owner of the beneficial interest as the "lender." The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan. Many of the companies that participate in the mortgage industry – by originating loans, buying or investing in the beneficial interest in loans, or servicing loans – are members of MERS and pay a fee to use the tracking system.

> *    *    *

> [The process of recording assignments of deeds of trust] became cumbersome to the mortgage industry, particularly as the trading of loans increased. It has become common for original lenders to bundle the beneficial interest in individual loans and sell them to investors as mortgage-backed securities, which may themselves be traded. MERS was designed to avoid the need to record multiple transfers of the deed by

(continued...)

3

for the lender Greenpoint; and

2. An Adjustable Rate Note ("Note") dated May 24, 2007, in the amount of $999,900.00, identifying Green as borrower and Greenpoint as lender.

The bankruptcy court entered an order in July 2010 denying Waterfall's Relief From Stay Motion "for lack of cause shown."

Meanwhile, LoanCare had filed in December 2009 a proof of claim ("Proof of Claim") asserting a secured claim based on the same Note and Deed of Trust. In the proof of claim, LoanCare did not state that it was acting as servicing agent for Waterfall, nor did it even mention Waterfall's name.

Nonetheless, relying on the information contained in the May 2010 Relief From Stay Motion, Green filed in September 2010 a motion entitled: "Motion For Proof of Perfected Ownership Interest and Right to Collect on Proof of Claim" seeking relief against both LoanCare and Waterfall with respect to the Proof of Claim.[3] Even though a conformed copy of the recorded Deed of Trust was attached to the Proof of Claim, Green asserted that the Proof of Claim did not satisfy the requirements of Rule 3001(d)

---

[2](...continued)
serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender.

Id. at 1038-39 (citing Jackson v. Mortg. Elec. Reg. Sys., Inc., 770 N.W.2d 487, 490 (Minn. 2009), and Robert E. Dordan, Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Existence, 12 Loy. J. Pub. Int. L. 177, 178 (2010)).

[3]In essence, Green's motion objected to the Proof of Claim. Accordingly, we hereinafter refer to this motion as the "Claim Objection."

4

because the Proof of Claim contained insufficient evidence demonstrating perfection of Waterfall's alleged lien on the Property. According to Green, there was nothing recorded in the public records for San Luis Obisbo County indicating that Waterfall, or anyone else, had taken from Greenpoint an assignment of the Deed of Trust. Green argued that any interest Waterfall claimed to have in the Note and the Deed of Trust was invalid without a duly executed and recorded written assignment of the Deed of Trust.

Alternately, Green argued that MERS's involvement in the Loan transaction rendered unenforceable the lender's rights under the Note and the Deed of Trust, regardless of who attempted to assert those rights. It is difficult to follow Green's argument on this point. On the one hand, she stated that, for purposes of the Claim Objection, she was assuming that MERS held the original Note. On the other hand, Green argued:

> It is the Debtor's understanding that once a note is registered with MERS, all subsequent assignments are done electronically; MERS never acquires actual physical possession of the note, nor do they acquire any beneficial interest in the note . . . .
>
> It is the Debtor's contention that MERS had no beneficial interest in the note and since MERS was not the title holder, the chain of title was broken and consequently no one has standing to sue (obviously, the servicing company [LoanCare], who filed the Proof of Claim, has no beneficial interest in the note either).
>
> *     *     *
>
> As held by the Court in the bankruptcy case *In re Walker* cited above, MERS has no authority to foreclose on the Debtor's mortgage, since it is a 'mere nominee'. And even more importantly, since MERS had no beneficial, transferable interest in the Mortgage, Waterfall cannot collect on the claim.

Claim Objection (Sept. 10, 2010) at p. 7 of 28.

Green also generally complained about MERS's electronic mortgage registration system. According to Green, MERS's system violates "the California Business and Professions Code, as well as Unfair and Deceptive Acts and Practices . . . ." Id. at p. 8 of 28.

By way of relief, Green essentially asserted that the court should require Waterfall to establish its "right to collect on the claim" by demonstrating its "true ownership" of the Note and the Deed of Trust. Id.

In October 2010, Waterfall and its new servicing agent Quantum Servicing Corp. ("Quantum") filed a response to the Claim Objection, along with a "Supplemental Declaration" of April Kennedy in support of the response. In the Supplemental Declaration, Ms. Kennedy declared that she was an employee of Quantum, and that Quantum was Waterfall's new servicing agent. Ms. Kennedy further stated that she had reviewed "business records" reflecting a chain of transfers of the "beneficial rights" under the Loan. According to Kennedy, the beneficial rights were first held by Greenpoint but ultimately ended up with Waterfall by January 2009. Kennedy also stated that the same business records reflected a chain of transfers of the "servicing rights" under the Loan. Kennedy declared that Greenpoint was the first servicer of the Loan, that LoanCare was the second servicer of the Loan and that Quantum was the third servicer of the Loan. According to Kennedy, LoanCare was the servicing agent for the Loan between August 2008 and September 2010. Kennedy's statements regarding LoanCare and Waterfall are consistent with Waterfall's claim that LoanCare filed the Proof of Claim in

December 2009 on behalf of Waterfall as the servicing agent under the Loan.

In addition to Kennedy's declaration, Waterfall relied upon all of the papers filed in support of its prior Relief From Stay Motion. Waterfall argued that these items were sufficient to establish the standing of its former servicing agent LoanCare to file the Proof of Claim on Waterfall's behalf. Alternately, Waterfall requested additional time to respond to the Claim Objection so that its new servicing agent Quantum could obtain and present additional documentation to substantiate Waterfall's interest in the Loan.

Green filed a reply in support of her Claim Objection ("Reply"). In her Reply, Green asserted that Waterfall should be required to produce the Original of both the Note and the Deed of Trust. The remainder of Green's Reply goes into more detail about her complaints regarding MERS and its electronic registration system. According to Green, MERS generally is used by lenders to hide their identity from borrowers, to avoid payment of recording fees, and to turn pools of loans into ponzi schemes through the securitization process.

Significantly, for the first time in the Reply, Green claimed: (1) that her Loan amounted to a contract of adhesion; (2) that Waterfall would be unjustly enriched if it were allowed to enforce its rights (if any) under the Loan; and (3) allowing enforcement of the Loan would be unconscionable (collectively, the "Unconscionability Claims"). But Green's Unconscionability Claims were based solely on her general, unsubstantiated allegations against MERS. Green did not in any way tie her

7

Unconscionability Claims to any specific alleged misconduct concerning her particular Loan.

The bankruptcy court held two hearings on the Claim Objection in the Fall of 2010. After the second hearing, the court directed Waterfall to file a supplemental brief by the end of 2010 in support of its standing to file the Proof of Claim, and the continued the hearing on the claim objection to January 11, 2011.

Waterfall and Quantum filed their supplemental brief ("Supplemental Brief") on December 30, 2010. In it, Waterfall admitted that written assignments of the beneficial interest in the Deed of Trust were never drafted or recorded. According to Waterfall, the registration information on MERS's website was meant to serve as a substitute for the execution and recordation of written assignments. More importantly, Waterfall claimed it had standing to file the Proof of Claim because it was a "person entitled to enforce" the Note within the meaning of § 3301(a) of the California Commercial Code.[4] Waterfall argued that it was a "person entitled to enforce" under Cal. Com. Code § 3301(a) because it was a "holder" of the Note. As Waterfall explained it, pursuant to Cal. Com. Code § 1201(b)(21)(A), its possession of the original Note indorsed in blank made it a holder of the Note. Waterfall further argued that paper assignments of the Deed of Trust were unnecessary either to perfect the lien created by the Deed of Trust or to convey the beneficial interest under

---

[4]Division 3 of the California Commercial Code is California's version of Article 3 of the Uniform Commercial Code.

the Deed of Trust.

Green filed a response to the Supplemental Brief on January 7, 2011, a few days before the continued claim objection hearing. Green claimed that Cal. Com. Code § 9109(d)(11) rendered Division 3 of the Cal. Com. Code inapplicable to transactions creating or transferring liens on real property. According to Green, the transfer of the lender's rights under the Deed of Trust was governed by provisions of California's Civil Code, particularly Cal. Civil Code § 1091, which required a writing signed by the transferor. Green further argued that Waterfall's attempt to rely solely on its status as a holder of the original promissory note contravened both the California Civil Code and the "lex situs" doctrine.[5]

At the January 11, 2011 continued hearing on the Claim Objection, Waterfall appeared through its servicing agent Quantum, which presented the original Note, indorsed in blank, and the original Deed of Trust, to Green and to the Court. The bankruptcy court advised Green that it did not receive, and had not had an opportunity to review, her response to the Supplemental Brief, but the court allowed Green to make the same arguments as part of her oral argument at the hearing.

The bankruptcy court thereafter ruled that Greenpoint had duly perfected its lien against the Property by recording the Deed of Trust in the official records for San Luis Obispo County, California. The court further ruled that Waterfall and its

---

[5]We explain Green's reference to the lex situs doctrine in our merits discussion, infra.

9

servicing agent Quantum were in possession of the original Note indorsed in blank by Greenpoint, which gave them standing to enforce the Note. Based on these rulings, the court held that it was going to overrule Green's Claim Objection.

Notwithstanding the court's oral ruling at the January 11, 2011 hearing, there was a substantial delay before entry of an order overruling the Claim Objection because neither Waterfall nor Quantum lodged a proposed form of order. Ultimately, the bankruptcy court entered a final order in July 2011. But before that order was entered, a number of additional events occurred that are relevant to this appeal. Foremost among them, Green filed motions requesting a new hearing and seeking reconsideration of the court's oral ruling (collectively, "Post-hearing Motions"). According to Green, the bankruptcy court had not given her adequate time to respond to the Supplemental Brief. However, there was nothing particularly new about the Post-hearing Motions. Green merely elaborated on the arguments she had previously made in support of her Claim Objection.

Without holding an additional hearing, the bankruptcy court entered an order denying the Post-hearing Motions, for essentially the same reasons that it had stated when it orally had overruled Green's Claim Objection.

Green appealed the order denying her Post-hearing Motions (BAP No. CC-11-1253). But we dismissed that appeal on jurisdictional grounds, because Green did not timely file her notice of appeal within fourteen days of entry of that order.

On July 6, 2011, the bankruptcy court entered an order overruling Green's Claim Objection. Green filed a notice of

appeal from that order on July 13, 2011.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158, subject to the discussion set forth immediately below.

Before we address the merits of this appeal, we first must address a jurisdictional issue raised by the rather odd procedural history of this matter. We agree with our prior BAP panel that Green's appeal of the Post-hearing Motions was untimely and should have been dismissed. However, we must determine the proper scope of the appeal now before us, which was timely filed after the court entered the order overruling the Claim Objection. In this instance, the scope of this appeal hinges on the finality of the bankruptcy court's orders.

Generally speaking, an order is final, rather than interlocutory, only when it fully adjudicates the issues raised and clearly manifests the court's intent to be its final act in the matter. Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1120 (9th Cir. 2007) (quoting Slimick v. Silva (In re Slimick), 928 F.2d 304, 307 (9th Cir. 1990)). To ascertain the trial court's intent, we may look to the content of the order, as well as the judge's and the parties' conduct. In re Brown, 484 F.3d at 1120; In re Slimick, 928 F.2d at 308.

Green's appeal of the order denying her Post-hearing Motions was an appeal from an interlocutory order, not final, because the bankruptcy court did not intend that order to fully and finally dispose of the entire matter – the Claim Objection.

11

Here, the bankruptcy court's comments at a hearing held on June 29, 2011, reflect that the court had expected Waterfall to lodge a proposed order memorializing the court's January 11, 2011 oral ruling overruling the Claim Objection, but that Waterfall had not done so. In response to the court's comments at that hearing, Waterfall and Quantum apparently lodged a proposed form of order, which the court signed and entered on July 6, 2011. That was the final order fully disposing of the Claim Objection.

Orders denying motions for new trial and motions for reconsideration typically are final orders, but that is in part because they usually are entered <u>after</u> entry of an order disposing of the underlying dispute. Here, the converse is true. The May 3, 2011 order denying Green's Post-hearing Motions was entered <u>before</u> the court entered its July 6, 2011 order disposing of the underlying Claim Objection. As a result, the order denying Green's Post-hearing Motions was interlocutory, not final, at the time it was entered.

When a litigant files an untimely appeal from an interlocutory order, we must dismiss it. <u>See</u> <u>Baldwin v. Redwood City</u>, 540 F.2d 1360, 1364 (9th Cir. 1976). However, that interlocutory order ultimately merges into the final order, when it eventually is entered, and a timely appeal taken from the final order may cover both the final order as well as any interlocutory order leading up to the entry of the final order. <u>Id.</u>; <u>see also</u> <u>U.S. v. Real Property Located at 475 Martin Lane, Beverly Hills, CA</u>, 545 F.3d 1134, 1140-41 (9th Cir. 2008).

Accordingly, both the order overruling the Claim Objection and the order denying the Post-hearing Motions are within the

scope of this appeal. To the extent the parties' briefs address issues raised by either order, we may consider them.

## ISSUE

Did the bankruptcy court err when it overruled Green's Claim Objection?

## STANDARDS OF REVIEW

"'An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error.' . . . We review de novo whether a party has standing." Allen v. U.S. Bank, N.A. (In re Allen), 472 B.R. 559, 565 (9th Cir. BAP 2012) (quoting Veal v. Am. Home Mortg. Serv., Inc. (In re Veal), 450 B.R. 897, 906, 918 (9th Cir. BAP 2011)).

## DISCUSSION

As a threshold matter, we note certain key facts that Green has not disputed. Green has not disputed that Greenpoint loaned her roughly $1 million and that she executed the Note and the Deed of Trust in exchange for the Loan. Green also has not disputed that Greenpoint recorded the Deed of Trust in the official records of San Luis Obispo County and that Greenpoint indorsed the Note in blank. Nor has Green disputed that LoanCare was acting as Waterfall's servicing agent at the time it filed the Proof of Claim or that Quantum subsequently succeeded LoanCare as Waterfall's servicing agent.

The sole issue raised in Green's Claim Objection was

13

Waterfall's standing to file the Proof of Claim.[6] While there are a number of different aspects to standing doctrine, Green's Claim Objection focused on whether Waterfall was the party entitled to enforce the Note and the Deed of Trust. This issue implicated the prudential standing requirement that litigants must assert their own legal rights and not the rights of others. Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 289-90, 128 S.Ct. 2531, 2544 (2008); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205 (1975). It also implicated the "real party in interest rule," Civil Rule 17(a), which provides that "[a]n action must be prosecuted in the name of the real party in interest."[7]

We have plowed this same ground several times recently, most notably in two published decisions, In re Allen, 472 B.R. 559, and In re Veal, 450 B.R. 897. In those two decisions, we generally held that a party has standing to file a proof of claim

---

[6]In the reply she filed in the bankruptcy court in support of her Claim Objection, Green sought for the first time to add her Unconscionability Claims for consideration. By way of these claims, Green apparently sought to have the court rule that Waterfall should not be permitted to enforce the Note and the Deed of Trust even if Waterfall established its standing. Green has elaborated on these claims in her appeal briefs. However, in addition to belatedly raising her Unconscionability Claims, Green never offered any evidence to support them. In fact, these claims were nothing more than unsubstantiated allegations of general misconduct by MERS and its members, which Green generally failed to connect to her particular Loan. Consequently, Green's Unconscionability Claims cannot and do not support reversal of the orders on appeal.

[7]Rule 9014(c) makes Civil Rule 17 applicable in contested matters, which include claim objections. In re Allen, 472 B.R. at 565 n.3.

14

based on a promissory note secured by real property if that party is a "person entitled to enforce" the note under § 3-301 of the Uniform Commercial Code ("UCC"). In re Allen, 472 B.R. at 565; In re Veal, 450 B.R. at 902. In relevant part, a party is a person entitled to enforce the note if it is a "holder" of the note, as defined in UCC § 1-201(b)(21)(A). In re Allen, 472 B.R. at 565; In re Veal, 450 B.R. at 910-11. Under UCC § 1-201(b)(21)(A), a "holder" includes a "person in possession of a negotiable instrument[8] that is payable . . . to bearer . . . ." In turn, a negotiable instrument is payable to the bearer when it is indorsed in blank. See UCC § 3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); see also In re Allen, 472 B.R. at 567.

Here, the record indicates that Waterfall's servicing agent Quantum presented to the bankruptcy court the original Note indorsed in blank by Greenpoint,[9] thereby demonstrating that it

_____

[8]The bankruptcy court's ruling indicates that it treated Green's Note as a negotiable instrument. Green has not challenged that aspect of the bankruptcy court's ruling. In any event, even if we assume that the Note did not meet all the formal requirements to qualify as a true negotiable instrument under UCC § 3-104, there were sufficient grounds for the court to have treated the Note as if it were a negotiable instrument for purposes of determining who is entitled to enforce the Note. See In re Veal, 450 B.R. at 909 & nn. 14, 15.

[9]Green has not disputed that Greenpoint indorsed the Note in blank, nor is there any evidence in the record which would

(continued...)

15

was in possession of the Note and that the Note was payable to bearer. Based thereon, the bankruptcy court determined that Waterfall had standing to file a proof claim based on the Note and the Deed of Trust. In light of our holdings in Allen and Veal, we perceive no error in the bankruptcy court's ruling.

On appeal, Green principally argues that the bankruptcy court should not have applied UCC Article 3 to determine Waterfall's standing. Green claims that Division 3 of the California Commercial Code – California's version of UCC Article 3 does not apply. Instead, Green claims that a number of provisions of California's Civil Code do apply, and that these provisions prohibit the transfer of any interest in real property, including the assignment of a deed of trust, absent an executed and recorded writing. But Green's legal contentions are simply wrong.

Green first argues that Cal. Com. Code Division 3 does not apply because Cal. Com. Code § 9109(d)(11) expressly excepts from Division 3's coverage "the creation or transfer of an interest in or lien on real property."[10] But Green misreads the statute. On

---

[9](...continued)
support a contrary finding. See generally UCC § 3-308 (providing a presumption that indorsement signature is presumed to be authentic and authorized); Cal. Com. Code § 3308 (same).

[10]The parties to this appeal seem to agree that California law should be applied to resolve their dispute. Given that the Note is silent, that Green resides in California and that she executed the Note and the Deed of Trust in California, we agree. See Cal. Com. Code § 1301(b); see also Barclays Discount Bank Ltd. v. Levy, 743 F.2d 722, 724-25 (9th Cir. 1984); In re Veal, 450 B.R. at 921 n. 41 (applying Arizona's counterpart to Cal.
(continued...)

16

its face, Cal. Com. Code § 9109(d)(11) only governs Division 9; it simply does not address Division 3 and its coverage of negotiable instruments such as the mortgage note at issue here.

Green next argues that Waterfall's standing should not be based on Cal. Com. Code § 3301 because that statute is inconsistent with the requirements under the Cal. Civil Code for transferring an interest in California real property. In making this argument, Green invokes the "lex situs" doctrine[11] and states that the statutory scheme implemented by the Cal. Civil Code, particularly Cal. Civil Code § 1091,[12] contemplates that deeds of trust and other transfers of real property cannot be made except by operation of an executed and recorded writing

_____

[10](...continued)
Com. Code § 1301(b) under similar circumstances). In any event, Green has not pointed us to any material distinction for purposes of this appeal between Division 3 of the Cal. Com. Code and Article 3 of the UCC. Nor are we aware of any.

[11]As used by Green, the "lex situs" doctrine generally requires legal issues involving real property to be determined according to the laws of the state in which the property is situated. See Black's Law Dictionary (9th Cir 2009); see also Restatement (Second) of Conflict of Laws § 223(1) (1971)("Whether a conveyance transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs."). Green has not explained why, under the lex situs doctrine, the Cal. Civil Code would be entitled to any greater deference than the Cal. Com. Code.

[12]Cal. Civil Code § 1091 provides:

Requisites for transfer of certain estates. An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing.

17

memorializing the transfer.  According to Green, because Waterfall has admitted that there were no written assignments of the Deed of Trust executed or recorded, any purported transfer to Waterfall of the Deed of Trust was invalid under Cal. Civil Code § 1091, and the purported transfer to Waterfall of the Note consequently was a nullity.

But Green once again misreads the statute.  Cal. Civil Code § 1091 on its face explicitly permits transfers of interests in real property "by operation of law."  And it is settled California law that a lien on real property is incident to the underlying obligation and that a valid transfer of the underlying obligation also carries with it the lien.  See Cal. Civil Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security.").  Accord, Cockerell v. Title Ins. & Trust Co., 42 Cal. 2d 284, 291, 267 P.2d 16, 20 (Cal. 1954); Marx v. McKinney, 23 Cal.2d 439, 443, 144 P.2d 353, 356 (Cal. 1944); Lewis v. Booth, 3 Cal. 2d 345, 349, 44 P.2d 560, 562 (Cal. 1935); Union Supply Co. v. Morris, 220 Cal. 331, 338-40, 30 P.2d 394, 397 (Cal. 1934); Seidell v. Tuxedo Land Co., 216 Cal. 165, 170, 13 P.2d 686, 688 (1932); Ord v. McKee 5 Cal. 515, 516 (Cal. 1855); Domarad v. Fisher & Burke, Inc., 270 Cal. App. 2d 543, 553, 76 Cal. Rptr. 529, 535 (Cal. App. 1969); Santens v. Los Angeles Fin., 91 Cal. App. 2d 197, 201-02, 204 P.2d 619, 621-22 (Cal. App. 1949); Poe v. Francis 132 Cal. App. 330, 335-36, 22 P.2d 801, 803 (Cal. App. 1933); see also Cal. Comm'l Code § 9203(g) ("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a

18

security interest in the security interest, mortgage, or other lien."); Carpenter v. Longan, 83 U.S. 271, 275 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.").

In short, under long-settled California law, the valid transfer of the Note carried with it an assignment of the Deed of Trust. Because we already have held above that the Note was duly negotiated to Waterfall under Cal. Com. Code § 3201, Waterfall also qualifies by operation of law as the assignee of the Deed of Trust.

Green also incorrectly relies on several other Cal. Civil Code statutes.[13] As a group, these other statutes deal with the

---

[13]These statutes include Cal. Civil Code §§ 1107, 1169, 1214 and 1215. For the sake of completeness, each of these statutes is set forth below.

Section 1107 provides:

> Grant, how far conclusive on purchasers. Every grant of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him, except a purchaser or incumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is first duly recorded.

Section 1169 provides:

> In what office. Instruments entitled to be recorded must be recorded by the County Recorder of the county in which the real property affected thereby is situated.

Section 1214 provides:

> Every conveyance of real property or an estate for
(continued...)

19

rights of competing transferees of the same real property. They do not address the question of who Green must pay on account of her Loan obligations, which is the basic question raised by her Claim Objection. Put another way, it simply is irrelevant to the resolution of Green's standing issues who, among competing claimants, might be entitled to the economic value underlying the Note and the Deed of Trust. See In re Veal, 450 B.R. at 912. So long as Green knows that, to the extent she pays Waterfall, her Loan obligations legally will be considered satisfied under Cal. Com. Code § 3602(a), Green should be content. See id.

Alternately, Green argues that Greenpoint impermissibly "split" the Note and the Deed of Trust, by designating itself as payee in the Note while allowing MERS to be named as the "beneficiary" in the Deed of Trust. According to Green, this split effectively rendered both the Note and the Deed of Trust unenforceable.

---

[13](...continued)
years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

Section 1215 provides:

Conveyance defined. The term "conveyance," as used in Sections 1213 and 1214, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or incumbered, or by which the title to any real property may be affected, except wills.

20

Green's splitting argument ignores the plain language of the Deed of Trust. That language nominally designates MERS as "beneficiary" but further specifies that MERS serves as beneficiary "solely as nominee" for the "lender" – in this case Greenpoint and its successors. Based on the same deed of trust language, the Ninth Circuit has held that MERS's nominal beneficiary status, as nominee for the lender, does not irreparably split the Note the from the Deed of Trust, so long as MERS continues to serve as the nominee or agent for the lender or its successors. See Cervantes, 656 F.3d at 1044. Cervantes' holding is consistent with a number of published decisions within this circuit opining that MERS merely serves as the agent for the true beneficiary. See, e.g., Cedano v. Aurora Loan Servs., LLC (In re Cedano), 470 B.R. 522, 531 (9th Cir. BAP 2012) (identifying MERS as nominal beneficiary and agent/nominee for lender); Weingartner v. Chase Home Fin., LLC, 702 F.Supp.2d 1276, 1279-81 (D. Nev. 2010) (same); see also Gomes v. Countrywide Home Loans, Inc., 192 Cal. App.4th 1149, 1156 n.7, 121 Cal.Rptr.3d 819, 825 n.7 (Cal. App. 2011) (identifying MERS as the nominee, or agent, of the noteholder).

In light of the decisions cited above, we are not persuaded that the Note and the Deed of Trust have been irreparably split in a manner that would render the Loan documents unenforceable.

Finally, Green complains that she was not given sufficient time to respond to Waterfall's Supplemental Brief. Green further points out that the bankruptcy court admitted that it did not have an opportunity to review her written response to the Supplemental Brief before the court orally announced its decision

21

to overrule the Claim Objection, on January 11, 2011.

Nonetheless, the record reflects that the bankruptcy court did not enter its final order disposing of the Claim Objection until six months later, in July 2011. During the intervening six months, Green made the same arguments in her Post-hearing Motions, which the court explicitly addressed and rejected in its May 3, 2011 order denying the Post-Hearing Motions. Under these circumstances, Green cannot establish that she was prejudiced by the so-called insufficient amount of time she had to respond to Waterfall's Supplemental Brief. See generally Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 775-77 (9th Cir. 2008) (holding that inadequate notice was harmless error unless the appellant demonstrated prejudice).

## CONCLUSION

For all of the reasons set forth above, we AFFIRM the bankruptcy court's order overruling Green's Claim Objection and its order denying Green's Post-hearing Motions.

22